| DISTRICT COURT, ADAMS COUNTY, COLORADO<br>Court Address:    1100 Judicial Center Dr.<br>                  Brighton, CO 80601<br>                  Telephone:    (303) 659-1161 | DATE FILED: October 27, 2020 1:56 PM<br>FILING ID: EC83AE7DC94AD<br>CASE NUMBER: 2020CV31304 |
|---|---|
| **ASH MEADOWS TOWNHOMES ASSOCIATION, INC.;**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMGUARD INSURANCE COMPANY,**<br><br>**Defendant.** | **▲FOR COURT USE ONLY▲** |
| **ATTORNEY FOR PLAINTIFF:**<br>Jonathan E. Bukowski, #45614<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com | Case Number: 2020CV031304<br><br>Div.:   W       Ctrm: |
| **AMENDED COMPLAINT AND JURY DEMAND** ||

**COMES NOW** Ash Meadows Townhomes Association, Inc., by and through its undersigned counsel, and hereby submits this its Amended Complaint and Jury Demand against Defendant, AmGUARD Insurance Company, and in support of its Amended Complaint, alleges and avers as follows:

### PARTIES

1.　　Ash Meadows Townhomes Association, Inc. ("Plaintiff" or "Ash Meadows") is a Colorado nonprofit corporation with its principal office in Westminster, Colorado.

2.　　Defendant, AmGUARD Insurance Company ("Defendant" or "AmGUARD"), is an insurance company domiciled in the State of Pennsylvania authorized engage in the business of Insurance in the State of Colorado.

**JURISDICTION AND VENUE**

3.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.

4.      A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

5.      Jurisdiction is proper as to AmGUARD pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because AmGUARD conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within Adams County, Colorado.

6.      Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the property in question, occurred in Adams County, Colorado.

**FACTS COMMON TO ALL COUNTS**

A.      **THE PROPERTY**

7.      Ash Meadows maintains residential real property located in 12703 – 12793 Leyden Street Thornton, Colorado 80602 (the "Property").

8.      The Ash Meadows Property includes ten multi-story, residential buildings.

9.      Buildings 12753, 12763, 12773, 12793 were constructed in 2007, and Buildings 12703, 12723, and 12783 were constructed in 2008.

10.      The exterior walls are constructed with wood framing covered with siding and stone veneer.

11.      The roofs of the buildings at the Ash Meadows Property constructed in a gable configuration with a predominant pitch of 6:12 and covered with architectural shingles. The shingles installed on the roofs are no longer manufactured.

B.      **APPLICABLE PROVISIONS OF THE INSURANCE POLICY**

12.     Ash Meadows purchased an all-risk, replacement cost value, policy of insurance from AmGUARD under Policy Number ASBP995001 (the "Policy").

13.     The Policy was issued with effective dates of April 1, 2018 through April 1, 2019.

14.     The Policy's insuring agreement states:

A.      **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss

15.     The Policy does not define direct physical loss.

16.     The Policy does not define direct physical damage.

17.     At the time of the Storm, the Property was "Covered Property" for purposes of the Policy's insuring agreement.

18.     During the underlying insurance Claim, AmGUARD determined and agreed that the Property was "Covered Property" for purposes of the Policy's insuring agreement.

19.     At the time of the Storm, direct physical loss of or damage caused by hail was a covered cause of loss under the Policy.

20.     During the underlying Claim, Defendant determined and agreed that hail damage to the Property resulting from the June 18, 2018, Storm, was a covered cause of loss under the Policy.

21.     Pursuant to its Policy, Defendant agreed to repair, rebuild and replace damaged Property with materials of like kind and quality.

22.     The Policy does not include a matching limiting endorsement or exclusion.

23.     The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a reduction of the useful life of the roof covering.

24.     The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss of performance of the roof covering.

25.     The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss in the market value of the roof covering.

26.     Defendant must pay for the cost to achieve a reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property. *See Hamlet Condominium Ass'n v. American Mutual Family Ins. Co.*, 2016 CV 30594 (Co. Dist. Ct., April 12, 2017).

27.     The Policy further provides that legal action against AmGUARD must be brought within two years of the date of loss:

> **4.      Legal Action Against Us**
>
> No one may bring a legal action against us under this insurance; unless
>
> a.      There has been full compliance with all of the terms of this insurance; and
> b.      The action is brought within 2 years after the date on which the direct physical loss or damaged occurred.

## C.      <u>THE SUBJECT HAIL AND WIND STORM</u>

28.     On June 18, 2018, during the Policy period, the Property suffered direct physical loss and/or damage resulting from a severe hail and wind storm (the "Storm").

29.     The Storm produced hailstones measuring up to 2.75" in diameter that affected the Ash Meadows Property.

30.     Among other things, hailstones from the Storm struck and damaged the roof coverings of the buildings at the Ash Meadows Property, metal roof vent caps, windows, and gutters (the "Loss").

31.     Ash Meadows promptly reported its Loss to AmGUARD.

32.     AmGUARD assigned Claim Number ASBP995001-001-001-001 to Ash Meadows' Property Loss (the "Claim").

**D.     AMGUARD'S INDEPENDENT ADJUSTER AND ASH MEADOWS' PUBLIC ADJUSTER AGREE ROOFS REQUIRE REPLACEMENT DUE TO HAIL DAMAGE RESULTING FROM THE STORM**

33.     AmGUARD assigned the Claim to a Property & Casualty Claims Adjuster, Thomas F. Malloy.

34.     AmGUARD retained VeriClaim, Inc ("VeriClaim"), a company providing loss adjusting and claims management services. VeriClaim assigned James Cook to the Claim.

35.     Ash Meadows retained a Colorado licensed public insurance adjuster to assist with the investigation and adjustment of its Claim.

36.     Between September 13-15, 2018, James Cook and Ash Meadows' public adjuster performed an inspection of the Property, including the performance of test squares on each elevation of the roofs on the ten buildings at the Property. James Cook and Ash Meadows' public adjuster were in agreement that each elevation of the roofs covering the Property were damaged by hailstones requiring replacement.

37.     On or about September 15, 2018, AmGUARD had sufficient information within its possession to tender covered benefits for the Loss.

38.     On October 19, 2018, AmGUARD notified Ash Meadows that it would not share the inspection report or repair estimates prepared by James Cook.

E. **AMGUARD DISMISSES ITS INDEPENDENT ADJUSTER AND RETAINED A PROFESSIONAL ENGINEER**

39.    On or about October 19, 2018, AmGUARD notified Ash Meadows that it was retaining Rimkus Consulting Group to inspect the Property. Rimkus Consulting Group is an engineering and consulting company, which practices in Colorado, providing most of its services to the insurance defense industry.

40.    Upon information and belief, Rimkus Consulting Group actively markets its services to insurance carriers and insurance professionals. The majority of Rimkus Consulting Group's business in Colorado comes from insurance carriers like AmGUARD.

41.    Rimkus Consulting Group assigned John W. Bittner ("Bittner") to the Claim. Bittner is untrained and unqualified in insurance Policy interpretation and application.

42.    Bittner utilizes an engineering damage threshold that includes only damage to roof coverings resulting in a diminution of water-shedding capability or reduction in the expected long-term service life of the material. Consequently, Bittner performs a flawed investigation which only reports the number of hail damaged shingles that sustain functional damage and does not look for all signs of direct physical loss of or damage during his inspection. This approach is inconsistent with the standards of AmGUARD Insurance Company, and the insurance industry as a whole.

43.    The elevated functional threshold of hail damage utilized by Bittner is not contained in the Policy issued to Ash Meadows.

44.    The elevated functional threshold of hail damage utilized by Bittner is inconsistent with the Policy's terms and conditions.

45.    AmGUARD knew or should have known that the elevated threshold of hail damage utilized by Bittner during his inspection of the Property is inconsistent with the terms and conditions of the Policy.

46.     AmGUARD knew or should have known that that the elevated threshold of hail damage utilized by Bittner modified the Policy to include a cosmetic damage exclusion that was never bargained for.

47.     While it refused to disclose the inspection report and repair estimates prepared by James Cook with Ash Meadows, AmGUARD provided Bittner with a copy of the inspection report and repair estimates prepared by James Cook.

48.     Or about October 29, 2018, Bittner performed an inspection of the Property with Katherine E. Bemis ("Bemis"), an engineering intern with Rimkus Consulting Group. The majority of the roofing systems were inspected by the engineering intern, Bemis.

49.     On November 29, 2018, Rimkus Consulting Group prepared an Xactimate[1] repair estimate totaling $354,608.95 based on the flawed functional damage inspection performed by Bittner and the engineering intern, Bemis.

50.     The Rimkus Consulting Group repair estimate outlined the estimated cost of repairs for hail damage to varying extents on the roof coverings, metal roof vents, gutters and downspouts, windows, and wood trim of the buildings throughout the Ash Meadows Property.

51.     Bittner and Bemis determined that Building 12713, 12733, and 12743 had sufficient functional hail impact damage to warrant replacement, while 870 shingles on the remaining seven buildings were recommended for individual spot repair. Neither Bittner, nor AmGUARD, verified with any roofing contractor whether the individual spot repair of 870 shingles was feasible.

---

[1] Xactimate is standard replacement cost estimating software used by adjusters in the insurance industry to calculate the anticipated cost of repair to damaged property by providing price lists for the cost of repairs based on region and date.

52.     The Rimkus Consulting Group repair estimate does not include the required roofing felt or allowances for the steepness of the roof, nor does it provide any consideration to the checkboard appearance that will result from spot repairing the damaged discontinued shingles with new shingles.

53.     While Bittner identified 103 hail damaged windows, the Rimkus Consulting Group repair estimate does not include flanged installation or code required items, such as flashings, still pan, flashing tape, and all system integration with the existing building wrap. Instead, the Rimkus Consulting Group repair estimate employs an allowance for a generic window removal and replacement without any consideration to a reasonable uniform appearance between the replacement windows and those existing at the property.

54.     The deficiencies contained within the Rimkus Consulting Group repair estimate demonstrate the difficulties in allowing an engineer, untrained in insurance principles and policy application, to generate an estimate of repairs for an insurance claim.

55.     On December 11, 2018, AmGUARD provided Ash Meadows with the Rimkus Consulting Group repair estimate. AmGUARD has not provided Ash Meadows with a copy of the Bittner and Bemis investigation report.

56.     On December 11, 2018, Ash Meadows' public adjuster requested that AmGUARD provide Ash Meadows with a copy of the inspection report and repair estimates prepared by James Cook. In response to the request, AmGUARD notified Ash Meadows that it would not share the inspection report or repair estimates prepared by James Cook.

57.     AmGUARD reassigned the Ash Meadows Claim to a General Adjuster, Paul A. Prislupsky ("Prislupsky").

58.     On January 22, 2019, Ash Meadows' public adjuster requested AmGUARD release of payment for the undisputed hail damages identified within the Rimkus Consulting Group repair estimate totaling $354,608.95.

59.     On January 30, 2019, Ash Meadows provided AmGUARD with a sworn statement in proof of loss and repair estimate totaling $1,007,590.49.

60.     On March 14, 2019 and April 3, 2019, Ash Meadows' public adjuster requested AmGUARD provide payment for the hail damages identified within the sworn statement in proof of loss and repair estimate totaling $1,007,590.49.

61.     On April 24, 2019, over 140 days after receiving a copy of the Rimkus Consulting Group repair estimate, AmGUARD issued an actual cash value payment to Ash Meadows for the undisputed damages to the Property.

F.     **ASH   MEADOWS   SUBMITS   ADDITIONAL   INFORMATION DEMONSTRATING A COVERED LOSS**

62.     Ash Meadows subsequently retained a Colorado professional licensed engineer to provide an evaluation of the hail stone impact damage to the discontinued shingle roofs covering Building's 12703, 12723, 12753, 12763, 12773, 12783, and 12793. Ash Meadows' professional engineer documented hail impacts to the roofing systems, window screens, and vents to all of the inspected buildings.

63.     Ash Meadows' professional engineer confirmed the damages previously identified and presented by AmGUARD's independent adjuster, James Cook and Ash Meadows public adjuster. The below table shows the results of the test squares performed by Ash Meadows' professional engineer.

| Building No. | No. of Hail Impacts Per Test Square | | | |
|---|---|---|---|---|
| | North | South | East | west |
| 12703 | 0 | 7 | 4* | 16* |
| 12723 | 17 | 33 | 64* | 4* |
| 12753 | 2 | 10 | 20* | 8* |
| 12763 | 2 | 7 | 0* | 20* |
| 12773 | 3 | 3 | 4* | 0* |
| 12783 | 8* | 16* | 7 | 13 |
| 12793 | 0 | 4 | 4* | 4* |

64.     On or about April 3, 2020, Ash Meadows provided AmGUARD with its professional engineering report and requested a reevaluation of the Claim. Ash Meadows also provided AmGUARD with a copy of a report from ITEL Laboratories confirming the discontinuance of the asphalt shingles covering the roofs and the unavailability of a matching product and an updated repair estimate totaling $1,162,277.43.

65.     To date, AmGUARD has made no efforts to contact the professional licensed engineer hired by Ash Meadows to discuss his investigation or analysis.

66.     On or about April 3, 2020, AmGUARD had sufficient information within its possession to tender covered benefits for the Loss.

67.     On or about April 3, 2020, Ash Meadows' provided AmGUARD with its written demand to participate in the appraisal process outlined within the Policy to determine the amount of loss.

### G.     AMGUARD REFUSES TO RELEASE PAYMENT FOR UNDISPUTED HAIL DAMAGE TO THE PROPERTY

68.     On June 3, 2020, Prislupsky notified Ash Meadows that while he had prepared an updated repair estimate outlining additional undisputed hail damage to the Property resulting from the Storm, the updated repair estimate was only for negotiating purposes. Despite knowledge of

additional monies due to Ash Meadow, Prislupsky notified Ash Meadows that an additional actual cash value payment for damages identified on the updated estimate was not warranted.

69.    On June 3, 2020, Prislupsky notified Ash Meadows that AmGUARD would not be releasing any additional money based on the materials that had been provided from Ash Meadows' professional engineer, public adjuster, ITEL, or the City of Thornton.

70.    On June 6, 2020, Ash Meadows requested AmGUARD release a copy of its updated repair estimate and reconsider its decision to withhold payment of additional monies outlined in its updated repair estimate to allow Ash Meadows to begin repairs to its property.

71.    AmGUARD has made no additional payment on the Claim since April 24, 2019.

**H.    AMGUARD TERMINATES COMMUNICATION COMPELLING ASH MEADOWS TO FILE LITIGATION**

72.    On June 8, 2020, AmGUARD and Ash Meadows entered into an agreement to toll the statute of limitations and/or contractual time found in the Policy for concluding construction, requesting depreciation, or filing litigation related to or arising out of the Claim until Friday, October 9, 2020 ("Tolling Agreement").

73.    On October 1, 2020 and October 7, 2020, Ash Meadows requested that AmGUARD enter into a second Tolling Agreement to allow for the completion of the appraisal process. AmGUARD has failed to respond or acknowledge Ash Meadows request for a second Tolling Agreement

74.    Ash Meadows has fulfilled all duties required of it under the Policy after discovery of the Loss.

75.    Ash Meadows has performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by the acts, representations, and conduct of AmGUARD.

76.     While Ash Meadows has cooperated with AmGUARD in its investigation of the Claim, AmGUARD refuses to be open and honest in its dealings with Ash Meadows, including the concealment of relevant Claim file materials obtained from its consultants such as photographs, field notes, and communications relating to the Storm and Claim.

77.     The actions of AmGUARD have caused Ash Meadows great financial harm. The cost of repairs to the Property in dispute have increased due to the unreasonable delay caused by AmGUARD's untenable position and its failure to consider the information provided by Ash Meadows. Ash Meadows has also incurred significant costs in its retention of a public adjuster, attorney, and professional engineer to confirm the unpaid damage to the Property.

78.     As a result of AmGUARD's wrongful acts and omissions, Ash Meadows was forced to retain the professional services of Merlin Law Group, PA, who is representing Ash Meadows with respect to these causes of action.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

79.     Ash Meadows realleges and reaffirms Paragraphs 1-78 as if fully set forth herein.

80.     Ash Meadows purchased an all risk Policy requiring AmGUARD to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

81.     The Policy between Ash Meadows and AmGUARD is a binding contract.

82.     Ash Meadows paid premiums and otherwise performed all conditions precedent to recovery of benefits under their Policy with AmGUARD.

83.     AmGUARD has denied certain covered damages and continues to delay and deny certain claimed damages as outlined above.

84.     AmGUARD refuses to provide the contractually required and covered benefits to Ash Meadows.

85.     AmGUARD's failure to honor its obligations under the Policy is a breach of contract.

86.     AmGUARD's breach of contract has damaged Ash Meadows.

87.     Ash Meadows is entitled to all benefits due and owing under the Policy.

WHEREFORE, Plaintiff, Ash Meadows Townhomes Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

88.     Ash Meadows realleges and reaffirms Paragraphs 1-87 as if fully set forth herein.

89.     Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

90.     Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

91.     Ash Meadows is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

92.     AmGUARD had the non-delegable duty to investigate the claim objectively and to advise Ash Meadows of coverage under the Policy.

93.     AmGUARD delayed and denied payment of covered benefits to Ash Meadows as alleged in the preceding paragraphs of Ash Meadows' Complaint without a reasonable basis for its actions.

94.     AmGUARD has unreasonably delayed payment to Ash Meadows. Measured against objective industry standards for claim handling and payment, AmGUARD's actions have unreasonably delayed payment of the loss and damage. As more fully alleged above, AmGUARD has refused to consider additional information provided by Ash Meadows' consultants, and instead, has relied on a flawed engineering investigation has led to a gross undervaluation of the Loss and has resulted in a substantial delay of covered benefits to Ash Meadows without a reasonable basis.

95.     AmGUARD delayed the Claim by failing to objectively evaluate Ash Meadows' Claim based on all available evidence, and not just evidence which AmGUARD believed supported its position. More specifically, AmGUARD has refused to provide coverage for replacement of all the roofs covering the Property despite recommendations from its independent adjuster and the licensed public insurance adjuster.

96.     AmGUARD delayed and denied payment of covered benefits to Ash Meadows without a reasonable basis for its action by preferring the opinions of John Bittner and Rimkus Consulting Group without giving due consideration to the contrary opinions of Ash Meadows' public adjuster and professional licensed engineer.

97.     It is apparent from AmGUARD's conduct in the handling of Ash Meadows' Claim that AmGUARD has adopted a plan or approach to delay, as much as possible, its handling and payment of Ash Meadows' Claim.

98.     AmGUARD delayed and denied payment of covered benefits to Ash Meadows without a reasonable basis for its action by failing to issue an actual cash value payment of undisputed covered benefits over 140 days after learning that coverage was owed.

99.     As a result of AmGUARD's material breaches of the Policy, Ash Meadows has been unable to move forward with repairs to its Property.

100.    Based upon the foregoing Paragraphs, Ash Meadows is therefore entitled to two times the covered benefit that have been delayed and denied to it, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Ash Meadows Townhomes Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Common Law Bad Faith)**

101.    Ash Meadows realleges and reaffirms Paragraphs 1-100 as if fully set forth herein.

102.    AmGUARD owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which AmGUARD covenanted that it would, in good faith and in the exercise of fair dealing, deal with Ash Meadows fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Ash Meadows' rights to receive the benefits provided by the Policy.

103.   An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

104.   At all times, Ash Meadows fulfilled its obligations under the Policy and acted in accordance with its duty of good faith and fair dealing.

105.   AmGUARD has breached its covenant of good faith and fair dealing that it owes to Ash Meadows by engaging in a pattern of conduct designed to deprive AmGUARD of its rights and benefits under the Policy. As described in more detail above, AmGUARD and its agents knowingly underestimated the Claim and misrepresented the scope of damage to the Property.

106.   As alleged above and among other circumstances, AmGUARD committed numerous, willful or reckless unfair claim settlement practices including, without limitation:

(a)   Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance Policy it wrote and issued;

(b)   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c)   Refusing to pay claims without conducting a reasonable investigation based upon all available information, ignoring material information supplied by its insured and accepting obviously biased, result-oriented opinions from its retained expert to "justify" deficient assessments of its liability under the Policy;

(d)   Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, such that the damages from the hail event exceeded the amount acknowledged as being owed by AmGUARD;

(e)   Failing to reasonably adjust and compelling Ash Meadows to utilize appraisal and/or litigation to recover amounts due under the insurance Policy by offering substantially less than the amounts ultimately recovered in proceedings initiated by its insureds;

(f)   Misrepresenting the terms and conditions of the Policy in an attempt to influence the insured to settle for less than all benefits reasonably afforded

under the Policy for the subject loss and damage, including interposing unsupportable exclusions to deny and delay a meritorious, well-documented claim;

(g)   Encouraging its claim representatives, including Paul Prislupsky and Nona Loftus, to engage in unfair claims settlement practices against Ash Meadows, thereby violating applicable standards in the industry and the laws and regulations of the State of Colorado.

107.   AmGUARD has committed such actions willfully and with such frequency as to indicate a general business practice.

108.   AmGUARD's unreasonable conduct, including its complete rejection of additional evidence from Ash Meadows' professional engineer has effectively compelled Ash Meadows to institute litigation to recover amounts due under the insurance Policy.

109.   Ash Meadows has suffered and continues to suffer actual damages due to AmGUARD's breach of its covenant of good faith and fair dealing. As a direct and proximate result of AmGUARD's actions, Ash Meadows has:

(a)   Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;

(b)   Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and

(c)   Suffered and will continue to suffer other expenses, including public adjuster fee, engineering fees, meteorological fees, attorneys' fees, investigatory fees, and other losses.

WHEREFORE, Plaintiff, Ash Meadows Townhomes Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for all damages suffered as a foreseeable and proximate result of the conduct alleged herein, pre and post judgment interest, attorneys' fees in accordance with applicable law, costs including expert witness fees, and such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

110.    Ash Meadows demands trial by jury with respect to all claims and issues triable to

a jury.

Dated: October 27, 2020                                Respectfully submitted,

                                                       *s/ Jonathan E. Bukowski*
                                                       Jonathan E. Bukowski, Esq.
                                                       Colorado Bar No.: 45614
                                                       Merlin Law Group, PA
                                                       1001 17th Street, Ste. 1150
                                                       Denver, CO 80202
                                                       Telephone:  720-665-9680
                                                       Facsimile:   720-665-9681
                                                       E-Mail: jbukowski@merlinlawgroup.com