IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-CV-00029-RM-STV

ASH MEADOWS TOWNHOME
ASSOCIATION, INC.,

Plaintiff,

v.

AMGUARD INSURANCE COMPANY,

Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO BAR
EXPERT OPINIONS OF DAMIEN ARGUELLO AND THOMAS MILLER P.E.**

---

Plaintiff, Ash Meadows Townhome Association, Inc., by and through its undersigned counsel, hereby submits this response to Defendant's Amended Motion to Bar Expert Opinions of Damian Arguello and Thomas Miller P.E. (hereinafter the "Amended Motion"). Oral argument and an evidentiary hearing to determine whether the challenged opinions are admissible under the relevant Federal Rules of Evidence are specifically requested.

**RESPONSE TO DEFENDANT'S
CERTIFICATE OF COMPLIANCE WITH D.COLO.LCivR. 7.1(a)**

The amended motion was prompted by its lack of conferral in filing the original motion which should have been stricken *sua sponte* pursuant to conferral requirements of the Court's Practice Standards. *See* Raymond Moore's Civ. Practice Standard IV.G.2 ("Motions without a certificate required by D.C.COLO.LCivR 6.1E or 7.1A will be denied without prejudice *sua sponte*."). Regardless, after AmGUARD filed its motion, Plaintiff conferred on agreed topics that

are reflected in the Amended Motion. It is Plaintiff's position that due to the defect in filing in the original motion to bar expert testimony, that the Amended Motion is an untimely attempt to file a renewed motion instead of an Amended Motion under F.R.C.P. 15. Had the original motion been stricken for failure to confer, any subsequent motion would have required leave of court to file an untimely motion which AmGUARD did not address in its Amended Motion. Plaintiff requests the Court deny the Amended Motion for either a failure to confer in the original motion or in treating the Amended Motion as an untimely renewed motion. Separately, Plaintiff does not oppose that AmGUARD argue good cause for failure to confer in its original motion in its reply in support of its Amended Motion. Plaintiff will not seek a surreply on this topic.

**INTRODUCTION**

AmGUARD initially sought to bar certain expert opinions of Damian Arguello and Thomas Miller, PE. (ECF No. 80). In its Amended Motion, AmGUARD has withdrawn its arguments relating to Thomas Miller and has limited its argument relating to the opinions of Damian Arguello to whether he may opine regarding the validity of other experts' and witnesses' estimates and reports. (ECF No. 82). This is covered in subsection A of the original motion. (ECF No. 80).

The Court should deny the Amended Motion regarding AmGUARD's subsection "A" argument because it fails to meet the specificity requirement under the Court's Civ. Practice Standard IV.M ("The motion shall identify with specificity each opinion the moving party seeks to exclude." The practice standards require identification of each opinion the moving party seeks to exclude. AmGUARD's Amended Motion argument under subsection "A" is conclusory, general and nonspecific, merely stating that Mr. Arguello has improper opinions regarding Rimkus

estimates. *See e.g.*, ECF No. 80 at p. 4. AmGUARD fails to identify any distinct, specific, or single

opinion of Mr. Arguello it seeks to exclude.

Regardless, the below quotes in AmGUARD's Amended Motion may be relevant to

subsection A:

- "If the Rimkus approach has any validity, one would have expected AmGuard's appraiser to advocate for it and the dispute would've required resolution by an umpire. The fact that an umpire wasn't necessary speaks volumes." (*Id.*, at p. 5).

- "In essence, AmGuard chose an unrealistic and impractical approach to the repairs and stuck to it without any regard to Ash Meadows' interests in having its buildings appropriately repaired." *Id.*

- Citation to Arguello's opinion based upon conclusions that he believed Rimkus' investigation was "outcome-oriented" based upon his personal experience with Rimkus that they are "insurer friendly." (*Id.*, at p. 7). Supporting these citations, Defendant cites Mr. Arguello when he says, "[T]he outcome is always the same – a recommendation of a significant reduction of benefit payments, frequently based on unrealistic and impractical repair methods or damages thresholds." (*Id.*, at p. 4).

Again, it was difficult to make AmGUARD's argument out since it was not clearly

articulated. As stated below, these opinions are admissible pursuant to F.R.E. 702. Mr. Arguello

can testify to these opinions based on his extensive background experience adjusting claims and

subsequently as coverage counsel for various insurers. In further support, Plaintiff states as

follows:

**<u>LEGAL STANDARD</u>**

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert witness relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship

between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier

of fact, a court should consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## **ARGUMENT**

The three stated opinions above by Mr. Arguello are admissible under F.R.E. 702.

### **A.     Mr. Arguello's Background as an Attorney Working in the Insurance Industry Qualifies Him to Opine on Appraisal Considerations.**

AmGUARD's Amended Motion cites the following sentence of Mr. Arguello's opinion:

- "If the Rimkus approach has any validity, one would have expected AmGuard's appraiser to advocate for it and the dispute would've required resolution by an umpire. The fact that an umpire wasn't necessary speaks volumes." (*Id.*, at p. 5).

An adjuster must step back and evaluate what the policy covers and requires and provide guidance to, and/or disregard the recommendations of, external consultants when they conflict with the insurer's obligations under the policy. Because the engineer does not have access to policy forms, nor would they consider the policy language in doing their work, the assigned adjuster has the obligation to determine whether following the consultant's recommendations would comply with the insurer's obligations under the policy and applicable claim handling standards. That requires a working knowledge of how the policy is interpreted, the claim handling standards discussed by Mr. Arguello, and what is necessary to restore a roof to pre-loss condition as informed by actual roofing contractors who would be tasked with making repairs.

Mr. Arguello is qualified to opine about Rimkus' estimate credibility based upon his experience. Tenth Circuit precedent make clear that the "specialized knowledge" required for expert testimony "can be acquired through 'experience' and 'training.'" *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (quoting Fed. R. Evid. 702); *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017). He is qualified to opine on Rimkus' estimate based upon his multiple years acting both as an insurance adjuster and as counsel for insurers as shown in his qualification section of his report. (ECF No. 80-2).

First, he has worked in the insurance industry since 1986. *Id.*, at p. 2. He has reviewed and evaluated thousands of claim files and provided risk management advice to both policyholders and insurance companies concerning coverage issues. *Id.* To the extent that his claim reviews involved appraisals, he has the relevant background and training to evaluate whether an appraisal award presents coverage concerns. Mr. Arguello uses the same analysis that insurers use to evaluate insurance appraisal awards and he can be cross-examined on this topic at trial. Therefore, the fact that he finds the appraisal award notable for not utilizing or relying upon Rimkus' estimate is within the purview of his experience in adjusting claims.

AmGUARD's Amended Motion, if anything, really might be touching on the issue of an offhand remark. Judge Marcia S. Krieger addressed this in another case when she said:

> [T]he Court pauses to observe that a line-by-line exegesis of the opposing expert's report is not a particularly effective method for bringing a Rule 702 challenge. Most expert reports are simply disclosure tools, not the script by which an expert will testify at trial. Not every statement made in an expert's report will be uttered at trial, and frequently they contain offhand remarks, asides, explanations of methodology, facts that the expert has derived from other sources or simply assumed, and even arguments, little of which may actually be offered for admission at trial.

*Clifton v. State Farm Mut. Auto. Ins. Co.*, 18-cv-01231-MSK-STV, 2021 WL 1100403, at *2, (D. Colo. March 23, 2021). Judge Krieger notes that it is essential for a party challenging a potential expert's testimony under Rule 702 "to vigorously sift an expert's report to separate the wheat—the expert's actual opinions—from the remaining chaff." *Id.* Judge Krieger also wisely counseled that "objections that do not invoke the relatively narrow grounds of Rule 702 invariably result in denial of a motion with leave to raise non-Rule 702 objections at an appropriate time before or during trial." *Id.*

Here, the challenge to the statement is not clear. The Court should deny the Amended Motion because there may be admissible context for the statement at trial. The above quote does not speak to the issue of the reliability of the Rimkus' estimate or associated methodology. It only points out the alarming fact that AmGUARD's appraisers failed to consider the methodology which would mean it had no value in appraisal. If it had no value in appraisal, that would undermine the reliability of Rimkus' estimate and methodology. At the very least, Mr. Arguello's experience as an adjuster would allow him to opine on whether its exclusion from appraisal consideration weighs on its reliability from an insurance adjuster standpoint.

### B.   Mr. Arguello is Qualified to Opine about Rimkus' Repair Recommendations from Experience in Other Claims.

AmGUARD's Amended Motion also cites the below quote from Mr. Arguello's report:

- "In essence, AmGuard chose an unrealistic and impractical approach to the repairs and stuck to it without any regard to Ash Meadows' interests in having its buildings appropriately repaired." *Id.*

It must be noted that this opinion is made based upon extensive citation to other material in the file. For instance, Mr. Arguello in his report cited to AmGUARD's independent adjuster James Cook with Vericlaim, Inc., who testified in deposition that spot repair would not restore the

property to pre-loss condition. (ECF No. 80-2, at p.64). In fact, Mr. Cook opined that spot repair may cause more damage unless you are very skilled in carpentry. *Id.* Mr. Arguello also cited Plaintiff's public adjuster Clark Lodge who opined in an email that repairing prefabricated windows might be more expensive than replacing them and also voids the warranty from the manufacturer. *Id.* This is based upon Mr. Lodge's understanding that Rimkus priced removal of damaged windows at only $19.00 and replacement at only $257.00. *Id.* at 66.

Regarding industry standards, Mr. Arguello cites the following footnote to support his conclusion about the flaws with Rimkus' evaluation methods:

> I'm not alone in this observation that Rimkus advocates to reduce insurance claim payouts, rather than objectively evaluating damages. In 2016, forensic engineer Neil B. Hall, Ph.D., P.E., AIA, wrote: "At an ASCE Forensic Engineering conference, three Rimkus engineers defined hail impact damage to asphalt shingles as 'the loss of watershedding capability or a reduction in the expected long term life of the roofing material' (Sharara, Jordan & Kimble, 2009, p. 186). While clearly derived from Haag, the authors simply described their assertion as 'a functional definition which has industry acceptance'. That may be true, but what Haag developed as a working definition, Rimkus elevated to an industry standard without citing any consensus authority."

(Presented at the First Party Claims Conference, Warwick, Rhode Island, October 2016).

Moreover, citation to Arguello's opinion based upon conclusions that he believed Rimkus' investigation was "outcome-oriented" and "insurer friendly" is based upon his personal experience with Rimkus in reviewing claims they have been involved with. (*Id.*, at p. 7). Supporting these citations, Defendant cites Mr. Arguello when he says, "[T]he outcome is always the same – a recommendation of a significant reduction of benefit payments, frequently based on unrealistic and impractical repair methods or damages thresholds." (*Id.*, at p. 4).

Here, in proper context, Mr. Arguello's opinion is based upon personal experience with Rimkus overtime and reviewing articles and other presentations regarding their performance. His

personal experience is that Rimkus has a methodology of reducing the cost of repairs. That is why insurers hire Rimkus. He is qualified to testify about Rimkus from personal experience and based upon his review of materials including those cited above.

**CONCLUSION**

In conclusion, the attack on Mr. Arguello's qualifications is without merit. His robust experience in adjusting claims is all that is necessary to evaluate an engineer's estimate or report or to opine whether the non-use of such an opinion in appraisal is remarkable. Regardless, his report cites extensively to the basis for his attack on Rimkus' methodology. It is based on his prior experience in reviewing claims as an attorney that involved Rimkus. He can speak to this experience at trial. The attack on his qualifications goes to the weight of the evidence and not the admissibility of the opinion. Plaintiff further requests that it be afforded oral argument and an evidentiary hearing with its expert to determine whether the challenged opinions are admissible under the relevant Federal Rules of Evidence.

WHEREFORE, Ash Meadows Townhome Association, Inc., by and through its undersigned counsel, requests that Court deny AmGUARD's Amended Motion to bar expert opinions of Damien Arguello and for such other relief as the Court deems just.

Dated: February 20, 2023                    Respectfully submitted,

_s/ Nathanael Archuleta_
Michael W. Duffy, Esq.
Larry. E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Nathanael Archuleta, Esq.
Merlin Law Group, P.A.
1001 17th St., Ste. 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile: 720-665-9681

E-Mail: mduffy@merlinlawgroup.com
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: narchuleta@merlinlawgroup.com
*Attorneys for Plaintiff*
*Ash Meadows Townhomes Association, Inc.*

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on February 20, 2023, I electronically filed the foregoing

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO BAR EXPERT**

**OPINIONS OF DAMIEN ARGUELLO AND THOMAS MILLER P.E.** with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following email

addresses:

- Matthew Scott Ponzi
  mponzi@fgppr.com, kmcguire@fgppr.com

- Brian Edward Devilling
  bdevilling@fgppr.com, kmcguire@fgppr.com

*s/ Agnieszka Karcz*
Agnieszka Karcz, Paralegal