IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00029-RM-STV

ASH MEADOWS TOWNHOME
ASSOCIATON, INC.,

      Plaintiff,

v.

AMGUARD INSURANCE COMPANY,

      Defendant.

## DEFENDANT'S TRIAL BRIEF

NOW COMES Defendant, AmGuard Insurance Company ("AmGuard"), by and through its attorneys, and for its Trial Brief, states as follows:

**I.**    **Factual Background**

AmGuard insured Plaintiff Ash Meadows Townhome Association ("Ash Meadows") under a standard property insurance policy providing coverage for direct physical loss or damage to covered property. The Policy includes per-building deductibles totaling $244,300.80.

On June 18, 2018, a hailstorm struck Ash Meadows' property, which consists of ten multi-unit residential buildings. Ash Meadows waited 10 weeks, until August 31, 2018, to report the claim to AmGuard. The same day, AmGuard's adjuster Thomas Malloy retained independent adjuster James Cook of Vericlaim to inspect the property.

Mr. Cook found damage to the building exterior, including the roofs. He believed that the roofs would likely need to be replaced. However, Mr. Cook has no construction experience and is

not an engineer. Moreover, he documented his inspection with respect to only two of the ten buildings.

To further evaluate the damage, AmGuard retained Rimkus Engineering's John Bittner, P.E., to inspect the property. Mr. Bittner has an B.S. in Civil Engineering from the U.S. Military Academy at West Point and an M.S. in Civil Engineering from Stanford. He worked as a design engineer for the US Army Corps of Engineers designing residential and military structures and has been a forensic engineer for five years specializing in the investigation of hail damaged buildings. Mr. Bittner determined that three roofs had to be fully replaced but the other seven could be spot repaired. He also identified damage to building walls and windows.

Rimkus's Timothy Yawn is a construction consultant and damage estimator with substantial experience in the construction field. He is certified on Xactimate, a cost estimating program widely used in the insurance and construction industry. Based on Mr. Bittner's recommended scope of repairs, Mr. Yawn estimated replacement cost value (RCV) at $354,608.95 ("Yawn estimate").

AmGuard received the Yawn estimate on December 4, 2018. Within seven days, Mr. Malloy issued a position letter to Ash Meadows and requested it execute a Proof of Loss to receive payment. Under the Policy, an insured is required to execute a Proof of Loss before receiving loss payment. However, Ash Meadows did not return a Proof of Loss until January 30, 2019, when it submitted one totaling $1,007,590.49 RCV and $889,105.56 ACV.

Ash Meadows' Proof of Loss was based on an estimate from public adjuster Clark Lodge. As a public adjuster, Mr. Lodge is retained on a 10% contingency fee. Mr. Lodge provided no explanation or justification for the estimate, and it was unsupported by any forensic analysis

supporting total roof replacement. Moreover, he and Ash Meadows refused to execute a Proof of Loss for the undisputed amount of $354,608.95.

Despite not receiving a Proof of Loss for the undisputed amount, AmGuard issued payment totaling $133,208.41 on April 23, 2019. This amount represents the Rimkus RCV estimate, less the policy's per-building deductibles.

Following issuance of the payment, AmGuard did not hear from Ash Meadows for a year. On April 21, 2020 the Merlin Law Group ("Merlin") provided a letter of representation and yet another estimate, this one from Pivot Adjusters totaling $1,147,955.91 RCV $1,064,229.16 ACV. Simultaneously, Merlin demanded an appraisal under the Appraisal clause of the Policy. The parties initially agreed to postpone the appraisal process to attempt to reach a compromise settlement. However, the parties were unable to agree, and the dispute proceeded to appraisal on June 12, 2020. The appraisal panel issued an award on February 3, 2021 totaling $999,093.07 RCV and $914,239.84 ACV. Within 20 days, on February 23, 2021, AmGuard paid the ACV portion of the award[1], less prior payments and deductibles, totaling $536,730.69. AmGuard's payments to date total $669,939.10.

## II.   Legal Issues

Ash Meadows does not assert a claim for breach of contract, but asserts claims for common law bad faith and unreasonable delay in payment of covered benefits under C.R.S. § 10-3-1115, and seeks punitive damages arising from the common law bad faith claim.

### A.   Statutory Bad Faith

---

[1] Under the terms and conditions of the Policy, only ACV (replacement cost less depreciation) is owed until the property is actually repaired or replaced. Upon proof of repair or replacement and payment, the depreciation holdback is then paid up to the RCV of the award.

C.R.S. § 10-3-1115 and 1116 entitle an insured to twice the amount of covered benefit unreasonably delayed or denied. While an appraisal award does not preclude recovery in bad faith, an insured may not recover in bad faith for amounts determined within the scope of the appraisal. *Hometown Community Assn. v. Philadephia Ins. Co.*, 2017 WL 6335656, at *6 (D.Colo.); *Concept Restaurants v. Travelers Indem. Co.*, 2016 WL 8737773, at *2–3 (D. Colo. Dec. 2, 2016). In this case, it is anticipated that most of Plaintiff's claimed damages will be related to amounts determined at appraisal.

### B.  Common Law Bad Faith

Common law bad faith requires proof that "the insurer's conduct is unreasonable and the insurer knows or recklessly disregards the fact that its conduct is unreasonable." *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988); *Hometown Cmmty. Assn.*, 2017 WL 6335656 at *5. Like statutory bad faith claims, an insured may not recover for common law bad faith for amounts determined in appraisal. *Hometown Community Assn.,* 2017 WL 6335656, at *6; *Concept Restaurants*, 2016 WL 8737773, at *2–3.

Moreover, an insured may not recover duplicative damages under statutory and common law bad faith claims. C.R.S. 10-2-1116(4) provides in part, "Damages awarded pursuant to this section shall not be recoverable in any other action or claim." "An insured can recover damages for bad faith breach of insurance contract based on traditional tort principles." *Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004). "Compensatory damages for economic and non-economic losses are available to make the insured whole and, where appropriate, punitive damages are available to punish the insurer and deter wrongful conduct by other insurers." *Id.*

### C. **Punitive Damages**

Claims for punitive damages are governed by C.R.S. § 13-21-102, which provides in relevant part as follows:

> (1) (a) In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.
>
> \*   \*   \*
>
> (2) Notwithstanding the provisions of subsection (1) of this section, the court may reduce or disallow the award of exemplary damages to the extent that:
>
> > (a) The deterrent effect of the damages has been accomplished; or
> >
> > (b) The conduct which resulted in the award has ceased; or
> >
> > (c) The purpose of such damages has otherwise been served.
>
> (3) Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:
>
> > (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or
> >
> > (b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.
>
> \*   \*   \*
>
> (6) In any civil action in which exemplary damages may be awarded, evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of such damages.

### III. <u>Evidentiary Issues</u>

#### A. <u>Clark Lodge</u>

AmGuard expects numerous credibility and other evidentiary issues to arise with respect to Plaintiff's public adjuster Clark Lodge. Mr. Lodge was not disclosed as an expert witness. (See Doc. 77). However, he authored multiple estimates and Plaintiff might attempt to elicit opinions regarding the extent and value of damage to Plaintiff's property.

Mr. Lodge is employed under a 10% contingency agreement and is entitled to receive 10% of all amounts received through trial. (See Trial Ex. 72). His agreement provides as follows:

> I/We grant to the Adjuster the irrevocable right to adjust the loss for the insured.
>
> I/We agree and hereby assign Pivot Adjusters a fee shown below, based on the Replacement Cost Value of the claim:
>
> A. <u>10%</u> of the total claim amount (RCV), or
>
>          \*      \*      \*
>
> The contingent fee agreed to under line (A.) here shall apply to any and all amounts received by the insured arising out of the claim, whether by settlement with the insurance company, arbitration or litigation, and applies to the principal amount received along with any additional damages, such as triple damages, but does not apply to any attorneys' fees or costs recovered by the insured.

(See Trial Ex. 72).

In *Midtown Invs., LP v. Auto-Owners Ins. Co.*, No. 20-CV-01594-PAB-STV, 2022 WL 17039225, at \*6 (D. Colo. Nov. 17, 2022), this court barred expert testimony from a public adjuster paid on a contingency fee. The court recognized general ethical rules in Colorado prohibiting witnesses from receiving a contingency fee for testifying, and held that admissibility must be determined under a traditional Rule 403 balancing test. *Id.* The court held as follows:

Page **6** of **9**

> The Court finds that Mr. Bezek's opinion testimony, given his financial interest in the outcome of litigation, presents a danger of unfair prejudice to Owners that substantially outweighs its probative value, but the danger of this prejudice will be sufficiently limited by restricting Mr. Bezek's testimony to that of a fact witness.

Id. at *6. See also *Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, No. 17-CV-01773-MSK-MEH, 2022 WL 2198262, at *9 (D. Colo. Feb. 8, 2022) (recognizing ethical rules against witness contingency fees and finding "significant concerns about the reliability of [the public adjuster's] testimony.").

In this case, Mr. Lodge must not be permitted to offer any opinions regarding the value or extent of damage to Plaintiff's property. To the extent he testifies at all, the fact that Mr. Lodge is compensated on a contingency basis is admissible as to his credibility as well as how much he potentially stands to gain financially if Plaintiff's successfully obtain the damages they are seeking.

Second, Mr. Lodge has been barred from serving as an appraiser in other cases due to his lack of partiality. *Colorado Hosp. Servs. Inc. v. Owners Ins. Co.*, No. 14-CV-001859-RBJ, 2015 WL 4245821, at *3 (D. Colo. July 14, 2015). It is the long-standing rule, as recognized by the U.S. Supreme Court, that "[t]he partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974). Accordingly, the fact that he has been barred from serving as an appraiser is relevant and admissible.

**B.     Damien Arguelo**

Following AmGuard's filing of its Motion in Limine to Bar Opinions of Thomas Miller and Damien Arguelo, Plaintiff's counsel agreed that it will not present evidence on the following topics:

- Mr. Arguelo will not offer legal conclusions based upon applying the law to the facts of the case;

- Mr. Arguelo will not offer testimony or opinions regarding the motive, intent or state of mind of other witnesses.

As discussed in court at the Trial Preparation Conference, this means that Mr. Arguelo may not testify as to ultimate legal conclusions, but must keep his testimony in the realm of industry standards. Likewise, he may not testify that particular individuals or firms engaged in an "outcome-oriented" investigation or are "insurer-friendly." Finally, he may not testify as to the legal effect of various policy provisions, and may not offer opinions on construction or repair methods, as this is beyond his expertise. As Mr. Arguelo has limited experience in the actual handling of first-party insurance claims, it is highly questionable whether Plaintiff can lay the proper foundation for his testimony on industry standards. AmGuard therefore may seek to *voir dire* Mr. Arguelo outside the presence of the jury.

    C.    **James Cook**

Mr. Cook was AmGuard's independent adjuster. It was originally expected his testimony would be presented by deposition designation, but it now appears he will be available by videoconference. In reviewing the parties' deposition designations, the court has already ruled that Mr. Cook's activities on other insurance claims is not admissible. Likewise, he may not testify as to whether he was surprised by the appraisal result.

    D.    **Timothy Yawn**

Timothy Yawn prepared the estimate on which AmGuard relied in adjusting Plaintiff's claim. It was originally expected he would testify by deposition designation, but it now appears he will be available by videoconference. In reviewing the parties' deposition designations, the

court has already ruled that Mr. Yawn may not testify as to what is necessary to put an insured in a pre-loss condition, whether the "outcome" of an insurance claim is typically to put an insured in a pre-loss condition, or whether the insurance policy requires cosmetic matching.

*/s/ Brian E. Devilling*
MATTHEW S. PONZI
BRIAN E. DEVILLING
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 North LaSalle St.
14th Floor
Chicago, Illinois 60601
(312) 863-5000
bdevilling@fgppr.com
Attorneys for Defendant
