IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 21-cv-00029-RM-STV

ASH MEADOWS TOWNHOME ASSOCIATION, INC.,

    Plaintiff,

v.

AMGUARD INSURANCE COMPANY,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on two motions, one filed by each of the Parties. The first is a Renewed Motion for Judgment as a Matter of Law Under Rule 50, filed by Defendant AmGUARD Insurance Company ("AmGUARD"). (ECF No. 134.) The Second is a Motion to Enter Judgment for Two Times the Covered Benefits Delayed, Attorney Fees, Costs, Bad Faith Breach of the Insurance Contract, and Post-Judgment Interest, filed by Plaintiff Ash Meadows Townhome Association, Inc. ("Ash Meadows"). (ECF No. 136.) The Parties each filed responses (ECF Nos. 137, 139) and Replies (ECF Nos. 138, 140). Both Motions have now been fully briefed.

**I.    LEGAL STANDARDS**

    **A.    Fed. R. Civ. P. 50(b)(3)**

    "Rule 50 of the Federal Rules of Civil Procedure provides the process for challenging the sufficiency of the evidence in a civil jury trial." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1128 (10th Cir. 2019). "Judgment as a matter of law under Rule 50 is

appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Id.* at 1129 (quotation omitted). "Judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable people could not arrive at a contrary verdict." *Id*. at 1130 (brackets and quotation omitted). This Court does not make credibility determinations or weigh the evidence, and all reasonable inferences are drawn in favor of the nonmoving party. *See Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1156 (10th Cir. 2022). This is because "it is the sole province of the jury to appraise credibility, draw inferences, determine the weight to be given testimony and to resolve conflicts in the facts." *Id.* (quotation omitted).

  **B.** **Section 10-3-1116, C.R.S.**

Pursuant to Section 10-3-1115(1)(a) of the Colorado Revised Statutes, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." As pertinent here, subsection (1)(b)(I) of that provision further defines a "first-party claimant" as "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." Section 10-3-1116, C.R.S. provides the remedy for violations of this provision. Specifically, "[a] first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." 10-3-1116(1), C.R.S.

  **C.** **Attorney Fees and Costs**

Generally, the "American Rule" provides that "the prevailing litigant is ordinarily not

2

entitled to reasonable attorney's fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247 (1975). "However, that general rule is subject to exception if the contract in question calls for a deviation from that rule or if the legislature dictates an alternative arrangement through statute." *Guarantee Tr. Life Ins. Co. v. Est. of Casper by & through Casper*, 2018 CO 43, ¶ 23, 418 P.3d 1163, 1172; *see also Travelers Cas. And Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 448 (2007) (same). As noted above, in this case the statute at issue, Section 10-3-1116, C.R.S., provides for the recovery of attorney fees and court costs by the prevailing party. Although AmGUARD disputes the result of the litigation, it does not dispute that if the Court permits the decision of the jury to stand, Ash Meadows was the prevailing party in this litigation.

Once the Court determines that a party is entitled to an award of attorney fees, however, it must still determine whether the amount of attorney fees requested is reasonable. In statutory fee–shifting cases "the lodestar method is generally employed in calculating attorney fees." *Brody v. Hellman*, 167 P.3d 192, 204 (Colo. App. 2007). The lodestar calculation is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate." *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is presumptively reasonable. *Id.* "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988." *Cooper v. State of Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990).

"A 'reasonable rate' is defined as the prevailing market rate in the relevant community for an attorney of similar experience." *Etherton v. Owners Ins. Co.*, 82 F. Supp. 3d 1190, 1200 (D. Colo. 2015). "The party requesting fees bears 'the burden of showing that the requested

3

rates are in line with those prevailing in the community.'" *Id.* (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998)). "In order to satisfy his burden, plaintiff must produce 'satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)).

In determining whether the hours expended on a case were reasonable, the Court considers several factors: (1) whether the fees are for tasks that would ordinarily be billed to a client; (2) whether the party's counsel used "billing judgment" to winnow the hours from those actually spent do those that were reasonably expended; and (3) whether the amount of time spent on a task was reasonable in light of the complexity of the case or necessitated by the strategies employed by the party's opponent. *Id.* at 1198. "Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment." *Id.* at 1198-99 (citations omitted).

As noted above, section 10-3-1116(1), C.R.S. provides for the recovery of costs by the prevailing party. AmGUARD disputes neither Ash Meadows' entitlement to recovery of reasonable costs, nor the reasonableness of the costs claimed by Ash Meadows in this case.

### D. 28 U.S.C. Section 1961

Pursuant to 28 U.S.C. Section 1961,

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

> Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.
> . . .
>
> (b) Interest shall be computed daily to the date of payment except [for exceptions not pertinent here] and shall be compounded annually.

AmGUARD does not dispute that, if this Court permits the judgment to stand, Ash Meadows is entitled to post-judgment interest.

## II.   BACKGROUND

Ash Meadows is a homeowners' association representing the owners of townhomes in Thornton, Colorado. (ECF No. 106-1.) AmGUARD provided insurance to Ash Meadows during the pertinent period. (Id.) On June 18, 2018, the Ash Meadows property was struck by a hailstorm, which damaged the roof shingles, vents, gutters and downspouts, window frames and screens, heating and air conditioning condenser fins, overhead doors, fascia, and patio railings. (Id.) Pursuant to the insurance policy, damage from hail was a covered loss. (Id.) Ash Meadows filed a claim and AmGUARD retained an independent insurance adjuster, James Cook, to investigate. (Id.) Mr. Cook produced a report regarding the hail damage, but AmGUARD then hired Rimkus Engineering to further inspect the damage. Based on the Rimkus report, AmGUARD sent a letter to Ash Meadows, stating its position that the repairs to the buildings would total $354,608.95. (Ex. 30.) Ash Meadows ultimately submitted a sworn proof of loss representing the total cost for repairs to be $1,007,590.49. (Ex. 37.) Nevertheless, in April of 2019, AmGUARD issued payments for a total of $133,208.41, which represented roughly the total of AmGUARD's estimated repair costs less the Ash Meadows deductible. (Exs. 30, 42, 52.)

5

The Parties continued to dispute the total value of the needed repairs and, slightly over a year later, Ash Meadows invoked the appraisal procedure set forth in the insurance policy. (Ex. 51.) The policy provided that,

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. . . . The appraisers will state separately the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Ex. 3, p. 3.080.)

The appraisal was completed pursuant to the contract and in early 2021 the appraisers issued an award for a replacement cost of $999,093.07 with an actual cash value of $914,239.84. (Ex. 54.) Immediately thereafter, AmGUARD issued another series of payments to Ash Meadows for a total of an additional $536,730.69. (Exs. 56, 57.) That represented the total of the appraisal award, less the deductible and the prior payment. (Ex. 57.)

While the appraisal process was moving forward, Ash Meadows filed suit in the Adams County District Court. (ECF No. 1.) In its complaint, Ash Meadows raised three claims: (1) breach of contract; (2) unreasonable delay or denial of covered benefits pursuant to sections 10-3-1115 and -1116, C.R.S.; and (3) common law bad faith. (Id.) AmGUARD removed the action to this Court. (Id.) Ash Meadows ultimately amended its complaint to add a request for exemplary damages and to withdraw its claim for breach of contract. (ECF No. 67.)

The case proceeded to trial. After the completion of Ash Meadows' evidence and a portion of AmGUARD's evidence, AmGUARD moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. (ECF Nos. 120, 121.) AmGUARD made the same arguments it makes in this Renewed Motion, namely that Ash Meadows could not, as a matter of law, recover the amounts awarded in the appraisal and that Ash Meadows had failed to prove its claim for

6

common law bad faith.  (Id.)  AmGUARD also argued that Ash Meadows had failed to prove conduct sufficient to justify an award of punitive, or exemplary, damages.  (Id.)  The Court denied the Motion as to the first two grounds but granted it as to the claim for punitive damages, and it removed that question from the jury's consideration.  (ECF No. 121.)

The evidence proceeded and the case was ultimately given to the jury.  The jury found in favor of Ash Meadows on both of its claims.  (ECF No. 132.)  It found that Ash Meadows had proved that AmGUARD breached its insurance contract in bad faith and that $50,040.97 of its losses were attributable to that bad faith breach.  (Id.)  The jury also found that AmGUARD had unreasonably delayed or denied the payment of benefits, and that the amount of benefits it unreasonably delayed or denied was $669,939.10.  (Id.)  Following trial, the Parties filed the Motions at issue here.

### III.   ANALYSIS

#### A.   Judgment as a Matter of Law

In support of its request for judgment as a matter of law, AmGUARD argues first that, as a matter of law, a plaintiff may not recover in bad faith for amounts determined within the scope of an appraisal.  (ECF No. 134, p.6.)  It then argues that, even if Ash Meadows could, in theory, recover the amounts determined in the appraisal, Ash Meadows nevertheless failed to establish any unreasonable delay in this case as to that amount.  (Id., p.8.)  Finally, AmGUARD again argues that Ash Meadows failed to prove common law bad faith, asserting that Ash Meadows was required to show not only that AmGUARD's conduct in processing the claim was unreasonable, but also that it knew that its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct.  (Id., p.11.)  The Court will address these arguments in turn.

7

### 1. Recovery of Amounts Determined During Appraisal

AmGUARD's first argument is that plaintiffs are prohibited, as a matter of law, from recovering in bad faith for amounts determined during an appraisal. It points the Court to two cases, *Hometown Community Assn. v. Philadelphia Ins. Co.*, 17-CV-00777-RBJ, 2017 WL 6335656 at *6 (Dec. 12, 2017, D. Colo.), and *Concept Restaurants, Inc. v. Travelers Indem. Co.*, 16-CV-00450-DME-NYW, 2016 WL 8737773 at *2-3 (Dec. 2, 2016), which it argues stand for such a proposition. Unsurprisingly, Ash Meadows disagrees with AmGUARD's reading of those cases.

In the Court's view, the Colorado Supreme Court has resolved this question in its decision in *American Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1884-85 (2018). In *Barriga*, that Court concluded that "an award under section 10-3-1116(1) must not be reduced by an amount unreasonably delayed but eventually paid by an insurer because the plain text of the statute provides no basis for such a reduction." *Id.* at 1182. The Court noted that the statute's plain text "provides no basis for treating delayed benefits differently than denied benefits." *Id.* at 1185. In *Barriga*, as in this case, the plaintiff ultimately collected payments pursuant to a third-party appraisal process. *Id.* The jury, however, concluded that the defendant had unreasonably delayed payment of those amounts. *Id.* Here, too, Ash Meadows did eventually recover the amount due to it by way of the appraisal process. Nevertheless, the jury concluded that AmGUARD acted unreasonably in delaying that payment. Pursuant to *Barriga*, Ash Meadows can thus recover for the amount determined during the appraisal. The Court therefore denies AmGUARD's Rule 50 Motion on that basis.

### 2. *Unreasonable Delay in Payment of Amounts Determined During Appraisal*

AmGUARD next argues that even if, in theory, Ash Meadows could recover for the amounts determined during the appraisal, in this case it failed to prove that AmGUARD unreasonably delayed payment of that amount. First, it asserts that it cannot be held responsible for a delay that resulted from Ash Meadows' failure to make an appraisal demand. It argues that there is no evidence that it delayed after Ash Meadows finally did make an appraisal demand and notes that it promptly made the payment following the appraisal award.

Ash Meadows disagrees, arguing that the unreasonable delay can occur before, during, or after an appraisal. It further asserts that AmGUARD's unreasonable delay required Ash Meadows to participate in the appraisal process in the first place, because up until that time AmGUARD concealed the relevant reports from Ash Meadows, ignored the information submitted on Ash Meadows' behalf, unreasonably relied on the opinions of an inexperienced engineer over those provided by the engineer and public adjuster retained by Ash Meadows, attempted to pressure Ash Meadows to accept less than the full value of the loss, and refused to pay additional amounts even once it was provided with information that its recommended repair—that certain individual shingles be replaced—was not feasible due to the discontinuation of the shingles at issue.

The Court notes that the fact that AmGUARD's characterization of the evidence, which differs from Ash Meadows' characterization, if believed would require a different result, does not alter the fact that the jury apparently believed Ash Meadows' evidence, or mean that this Court should overturn the jury's verdict.

Furthermore, although AmGUARD asserts that certain evidence was insufficient as a matter of law, the Court is again unpersuaded that a different result is required. When asking

this Court to enter judgment as a matter of law, it is AmGUARD's burden to demonstrate that no reasonable jury could have concluded that Ash Meadows met its burden by a preponderance of the evidence. In the Court's view, AmGUARD has failed to make such a demonstration to this Court and the Court denies the Motion on this basis as well.

       3.   *Common Law Bad Faith*

AmGUARD's third argument is that Ash Meadows failed to prove common law bad faith. More specifically, AmGUARD asserts that Ash Meadows failed to prove the second element of the claim of common law bad faith—not only was Ash Meadows required to prove that AmGUARD's conduct in processing the claim was unreasonable, but also that AmGUARD either knew that its conduct was unreasonable or that it recklessly disregarded the unreasonableness of its conduct. (ECF No. 134, p.11.) AmGUARD argues that there was no testimony "touching on the issues of knowledge or reckless disregard." AmGUARD further contends that this Court recognized the lack of such evidence when it granted the Rule 50 Motion on the question of punitive or exemplary damages during trial. Ash Meadows disagrees, arguing that it presented substantial evidence that AmGUARD failed to properly investigate the claim and failed to review or question significant portions of the evidence that it did receive. (ECF No. 137, pp.10-14.) Thus, Ash Meadows argues, "[d]rawing all evidentiary inferences in favor of Ash Meadows, a reasonable jury would have a legally sufficient evidentiary basis for the verdict it returned." (Id., p.14.)

As an initial matter, the Court disagrees with AmGUARD that its ruling on the question of punitive damages represented a recognition that no reasonable jury could find AmGUARD acted knowingly or with reckless disregard of the unreasonableness of its conduct. Rather, the Court noted that the burden of proof on a claim for common law bad faith is merely a

10

preponderance of the evidence, whereas the burden of proof for punitive damages is beyond a reasonable doubt.  (Tr. 4/12/23, pp.151-52.)  In making its ruling during trial, the Court noted that "what you have got are, at best, inferences, that I believe I'm more than willing to allow the jury to make on the substantive claim, because, on that substantive claim, it's preponderance.  It's feather weight if you would."  (Id.)  But the Court did not believe that Ash Meadows presented evidence that would permit the jury to reach such a conclusion beyond a reasonable doubt.  (Id.)  The distinction between the burdens of proof continues to be the critical distinction.

As Ash Meadows points out, it presented evidence that, despite the disagreements over the cost of repairs to the property, AmGUARD's employees failed to review more than one report, including that performed by its own independent adjuster, as well as a report going to the feasibility of perform spot repairs on the roofs, as opposed to total replacements.  AmGUARD's claim director also testified that she could not remember having reviewed the report from  the engineering firm hired by AmGUARD itself.  Furthermore, the engineer who examined the property for that company testified that he omitted certain costs from his report and that no person from AmGUARD ever spoke with him about his report and conclusions.  From this evidence, a reasonable jury could have concluded, as this one apparently did, that AmGUARD acted with reckless disregard that its conduct was unreasonable when it evaluated Ash Meadow's claim in this manner.  Based on testimony regarding industry standards, a reasonable jury could conclude that AmGUARD's employees knew that they were not adequately investigating and evaluating a valid claim.  The Court certainly cannot conclude that no reasonable jury could conclude as it did.

Once again, the Court accepts that, if believed, AmGUARD's characterization of the evidence would have required a different result.  Nevertheless, Ash Meadows presented contrary

evidence and the jury apparently credited Ash Meadows' characterization and believed Ash Meadows' account. The dispute here is evidentiary. And the Court concludes that, drawing all reasonable inferences in favor of Ash Meadows, as the non-moving party, adequate evidence supports the jury's decision. Thus, the Court cannot conclude that it is compelled to overturn the jury's verdict in this case. For all of these reasons, AmGUARD's Rule 50(b) Renewed Motion for Judgment as a Matter of Law is DENIED.

### B. Attorney Fees and Costs

AmGUARD concedes that, if this Court rejects its Rule 50 Motion, as it has now done, then Ash Meadows is entitled to twice the delayed benefits, costs, attorney fees, and post-judgment interest. (ECF No. 139.) AmGUARD objects, however, to the hourly rates claimed by Ash Meadows' attorneys. (Id.)

#### 1. Attorney Fees

As noted above, the Court considers the "prevailing market rate" in the community in order to determine what constitutes a reasonable rate for attorneys. *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006). "Plaintiffs must provide evidence of the prevailing market rate for similar services," charged by lawyers with comparable skill and experience. *Id.* If the Court lacks sufficient evidence of the prevailing market rates, it can use its own knowledge of the legal market as well as other evidence of a reasonable market rate. *Id.* at 1225. In this case, Ash Meadows relies on prior decisions from this jurisdiction to support the rates its counsel charged. AmGUARD points likewise to prior decisions to argue the rates are too high.

In this case, Ash Meadows' counsel seeks a total of $348,717 in legal fees for 724.44 hours worked. Those fees break down as follows:

| Name | Position | Hours Worked | Rate | Total |
|---|---|---|---|---|
| Michael W. Duffy | Managing Attorney | 201.30 | $600-$700 | $140,630 |
| Larry E. Bache, Jr. | Attorney | 117.98 | $450-$550 | $64,549.00 |
| Jonathan E. Bukowski | Attorney | 224.09 | $400-$500 | $103,295.50 |
| Timothy G. Burchard | Attorney | 22.43 | $350 | $7,850.50 |
| Nathanael Archuleta | Attorney | 24.42 | $400 | $9,768.00 |
| Zachary Williams | Attorney | 8.57 | $300 | $2,571.00 |
| Agnieszka Karcz | Paralegal | 24.6 | $150-$225 | $5,295.00 |
| Matthew Stalcup | Legal Clerk | 58.89 | $225 | $8,833.50 |
| Sherrol Hall | Legal Assistant | 41.06 | $150-$200 | $5,767.00 |
| Ursula Thomas | Legal Assistant | .80 | $150 | $120.00 |
| Melissa Austin | Legal Assistant | .30 | $125 | $37.50 |
| **Total** | | **724.44** | | **$348,717.00** |

(ECF No. 136, p.10.)

The Court has reviewed the billing records that were included in Ash Meadows' Motion and has concluded that they reflect the reasonable exercise of billing judgment and do not reflect duplication of efforts or inefficient staffing. Presumably AmGUARD agrees with this analysis, as it does not argue that the hours expended were unreasonable. (ECF No. 139.) The question remains as to whether the rates charged were reasonable and reflective of the rates generally charged in this market.

AmGUARD does not point to any particular member of Plaintiff's Counsel's team that it believes is charging an unreasonable rate for services. Rather, it asserts that "[t]his Court has typically found substantially lower rates to be reasonable." (ECF No. 139, p.1.) It then cites to cases approving billing rates of up to $420 per hour, including one case in which the Court approved a rate of $400 per hour for the lead attorney in this case, Michael Duffy. (Id.) In that Order, which was issued in 2015, the Court pointed out that Mr. Duffy's rate of $500 an hour at that time was more than the rate that the plaintiff's own expert had attributed to the top plaintiff's insurance coverage and bad faith lawyers in Colorado. *Colo. Hospitality Servs. Inc. v. Owners*

13

*Ins. Co.*, 154 F.Supp.3d 1173, 1182 (D. Colo. 2015).  As Ash Meadows points out in its Reply, that order was issued eight years ago, and was decided before the substantial inflation that has taken place in the wake of the COVID pandemic.  (ECF No. 140, pp.3-4.)  More recently a Court in this jurisdiction approved rates of up to $550 per hour for the same attorneys, concluding that while the hourly rates billed "tend toward the high end of reasonable rates for this type of litigation," they were still "well within the reasonable range."  *U.S. General, LLC v. Guideone Mut. Ins. Co.*, 18-cv-01256-REB-NRN, 2022 WL 1302360 at *2-3 (D. Colo., Mar. 30, 2022). Ash Meadows also points to a different decision from 2015 in which a Court in this jurisdiction accepted an hourly billable rate of $695 as reasonable for an extremely experienced attorney based in Washington, D.C. who served as lead counsel on a case in this district.  *L-3 Comms. Corp. v. Jaxon Eng'g & Maint., Inc.*, 10-cv-02868-MSK-KMT, 2015 WL 1218067 at *4 (D. Colo. Mar. 12, 2015).

       The attorneys who represented Ash Meadows in this case are experienced and skilled. Mr. Duffy, in particular, has "nearly 40 years of experience handling insurance cases," and, as noted above, has been discussed repeatedly in cases from this jurisdiction which, seemingly universally, refer to him as an attorney of substantial skill and experience in this area of practice. *See Colo. Hospitality Servs. Inc.*, 154 F.Supp.3d at 1182.  The other two primary attorneys representing Ash Meadows, Mr. Bache and Mr. Bukowski, each have 12 years of experience handling insurance cases.  (ECF No. 136, p.12.)  Based on the Court's knowledge and experience in this legal market, it concludes that the rates charged in this case are reasonable, and thus the lodestar figure is presumed to be reasonable.

       That conclusion, however, is supported by a consideration of the factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-719 (5th Cir. 1974), and those listed by

the Colorado Rules of Professional Conduct, which are each often considered to determine the reasonableness of hours and rates. *Exterior Experts, Inc. v. Allstate Vehicle and Prop. Ins. Co.*, 19-cv-01566-RBJ, 2020 WL 6710561 at *1 (D. Colo. Nov. 16, 2020). Among the factors supporting the fee request in this case are the fact that Ash Meadows' counsel took this case on a contingent fee basis, the fact that this case proceeded through multiple years of motions practice to a five-day jury trial, and the fact that counsel obtained a high degree of success for its client, including a jury verdict of over $669,000, and a finding that AmGUARD unreasonably delayed or denied that amount of benefits. Thus, Ash Meadows will recover more than $1 million as a result of this litigation. For all of these reasons, the Court concludes that Ash Meadows' request for attorney fees is reasonable in this case and its Motion is GRANTED for a total of $348,717.00.

  2. Costs

The Parties do not dispute that Ash Meadows is entitled to recover costs from AmGUARD pursuant to section 10-3-1116(1), nor does AmGUARD contest the amount of costs sought by Ash Meadows. Thus, the Court GRANTS Ash Meadows' Motion for Costs in the amount of $71,778.75.

IV. **CONCLUSION**

Therefore, for the reasons set forth herein, the Court ORDERS as follows:

(1) That AmGUARD's Renewed Motion for Judgment as a Matter of Law Under Rule 50 (ECF No. 134) is DENIED;

(2) That Ash Meadows' Motion to Enter Judgment for Two Times the Covered Benefits Delayed, Attorney Fees, Costs, Bad Faith Breach of the Insurance Contract, and Post-Judgment Interest (ECF No. 136) is GRANTED;

15

(3) That Ash Meadows is awarded the following amounts:

    a. Attorney Fees: $348,717.00; and

    b. Costs: $71,778.75;

(4) That judgment shall enter in favor of Plaintiff Ash Meadows and against Defendant AmGUARD on Plaintiff's claim for bad faith breach of contract in the amount of $50,040.97;

(5) That judgment shall enter in favor of Plaintiff Ash Meadows and against Defendant AmGUARD on Plaintiff's claim under section 10-3-1116(1), C.R.S. for unreasonable delay or denial of insurance benefit for $ 1,339,878.20, which represents twice the covered benefit found by the jury to be $669,939.10; and

(6) That, pursuant to 28 U.S.C. § 1961, post-judgment interest shall run from today on the amounts awarded herein until the date of payment.

DATED this 9th day of November, 2023.

                                        BY THE COURT:

                                        RAYMOND P. MOORE
                                        Senior United States District Judge